UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIN KRUPA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE NEW JERSEY STATE HEALTH BENEFITS COMMISSION, *et al.*, <br><br> Defendants. | Case No. 2:16-cv-4637-SDW-LDW <br><br> **OPINION** <br><br> January 23, 2018 |

**WIGENTON**, District Judge.

Before this Court is Defendants New Jersey State Health Benefits Commission ("SHBC"), New Jersey School Employees Health Benefits Commission ("SEHBC"), New Jersey State Health Benefits Plan Design Committee ("SHBPDC"), School Employees Health Benefits Plan Design Committee ("SEHBPDC"), Christopher S. Porrino, in his official capacity as the former Attorney General of the State of New Jersey, Richard J. Badolato, in his personal capacity and official capacity as the former Commissioner of the New Jersey Department of Banking and Insurance, Florence J. Sheppard, in her official capacity as the former Director of the New Jersey Division of Pensions and Benefits, and members of the SHBC, SEHBC, SHBPDC, and SEHBPDC in their official and personal capacities' (collectively, "Defendants") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

---

[1] This Opinion refers to Defendants Badolato, Porrino, and Sheppard (although not confirmed) as having served in their respective positions formerly given the change in administration in the State of New Jersey, effective January 16, 2018.

1

Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This Opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED**.

## I. BACKGROUND & PROCEDURAL HISTORY

In 2001, the State of New Jersey enacted an infertility mandate (the "2001 Infertility Mandate"), which defined "infertility" as:

> the disease or condition that results in the abnormal function of the reproductive system such that a person is not able to: impregnate another person; conceive after two years of unprotected intercourse if the female partner is under 35 years of age, or one year of unprotected intercourse if the female partner is 35 years of age or older or one of the partners is considered medically sterile; or carry a pregnancy to live birth.

N.J. Stat. Ann § 17B:27-46.1x (2001), *amended by* N.J. Stat. Ann. § 17:48-6x; (ECF No. 52-3, Ex. A at 1).

On May 1, 2017, the State of New Jersey enacted a bill amending the 2001 Infertility Mandate (the "Amended Infertility Mandate"). N.J. Stat. Ann. § 17:48-6x; (ECF No. 52-3, Ex. B at 1). The Amended Infertility Mandate statutorily prescribes that infertility coverage be provided under certain health insurance plans, including the State Health Benefits Program ("SHBP") and School Employees Health Benefits Program ("SEHBP"), under which Plaintiffs are covered. It also expands the definition of "infertility" to include, in relevant part:

> a disease or condition that results in the abnormal function of the reproductive system as determined pursuant to American Society for Reproductive Medicine practice guidelines by a physician who is Board Certified or Board Eligible in Reproductive Endocrinology and Infertility or in Obstetrics and Gynecology or any one of the following conditions:
> . . .

2

> (4) A female without a male partner and under 35 years of age who is unable to conceive after 12 failed attempts of intrauterine insemination under medical supervision;
>
> (5) A female without a male partner and over 35 years of age who is unable to conceive after six failed attempts of intrauterine insemination under medical supervision;
>
> (6) Partners are unable to conceive as a result of involuntary medical sterility;
>
> (7) A person is unable to carry a pregnancy to live birth; or
>
> (8) A previous determination of infertility pursuant to this section.

N.J. Stat. Ann. § 17:48-6x; (ECF No. 52-3, Ex. B at 15-16).[2]

At all times relevant to this suit,[3] Plaintiffs were enrolled in NJ DIRECT insurance plans through the SHBP and SEHBP. (TAC ¶¶ 55, 71, 77, 88.) The NJ DIRECT Member Handbook states that "NJ DIRECT will follow the New Jersey State Mandate for Infertility." (TAC ¶ 51.) NJ DIRECT is administered by Horizon Healthcare Services, Inc., d/b/a Blue Cross Blue Shield of New Jersey ("Horizon"), and Horizon is contracted by the State of New Jersey to process and pay claims. Plaintiffs' allegations relate to Horizon's denial of coverage for infertility treatments under the 2001 Infertility Mandate. Plaintiffs further allege that the Amended Infertility Mandate is unconstitutional as to its definition of infertility.

Plaintiffs Erin and Marianne Krupa are a married same-sex couple who live in Montclair, New Jersey. (*Id.* ¶ 6.) Erin Krupa, age 36, is a State of New Jersey employee and an SHBP member. (*Id.* ¶¶ 6, 51.) Marianne Krupa, age 34, is a public school employee and an SEHBP member. (*Id.*) In May 2013, Erin was diagnosed with Stage III endometriosis and uterine cysts,

---

[2] Sections 6 and 7, which pertain to the SHBP and SEHBP, became effective immediately and apply to contracts in force, issued, or renewed on or after May 1, 2017.

[3] All citations to TAC refer to the Third Amended Complaint filed by Plaintiffs on June 12, 2017. (ECF No. 51.)

rendering her infertile. (*Id*. ¶¶ 52-54.) After Erin's doctor wrote a letter to Horizon outlining the medical reasons for her infertility diagnosis, Horizon extended coverage for infertility treatments in or around 2013 through 2015. (*Id*. ¶ 66.) Notwithstanding the infertility treatments, Erin continued to experience miscarriages and other health problems. Because Erin had a remaining *in vitro fertilization* cycle covered by Horizon, the Krupas decided to have Marianne carry Erin's embryo. (*Id*. ¶ 70.) Horizon initially denied Marianne's insurance claims because she had not been diagnosed as infertile. However, after meeting with the Krupas' doctor, Horizon extended coverage to Marianne for infertility treatment. (*Id*. ¶ 71.)

Plaintiff Sol Mejias ("Mejias") is in a same-sex marriage, and resides in North Bergen, New Jersey. (*Id*. ¶ 7.) Mejias, age 39, is a public school employee and an SEHBP member. (*Id*. ¶ 75.) Mejias attempted to conceive at home for over a year using genetic material provided by a male friend, but was unsuccessful. (*Id*. ¶ 78.) In 2015, Mejias sought and was denied coverage from Horizon for intra-uterine insemination ("IUI") treatment, because Mejias' at-home, self-IUI treatments were not medically supervised for one year. Thus, she "could not establish abnormal function of the reproductive system" necessary to obtain coverage under the 2001 Infertility Mandate. (*Id*. ¶ 79.)

Plaintiff Sarah Mills ("Mills") is in a same sex-relationship and resides in Union City, New Jersey. (*Id*. ¶ 8.) Mills, age 32, is a State of New Jersey employee and an SHBP or SEHBP member. (*Id*. ¶¶ 8, 86.)[4] Mills suffers from polycystic ovarian syndrome and anovulation. (*Id*. ¶ 87.) In 2016, Mills consulted with an infertility specialist who confirmed that she would likely need infertility treatment to conceive. (*Id*.) Notwithstanding, Horizon declined to cover Mills'

---

[4] It is unclear whether Mills is a member of the SHBP or SEHBP. (*See* TAC ¶ 8; *contra* ¶ 86.)

infertility treatment "unless she could prove infertility by having unprotected intercourse with a man for two years." (*Id*. ¶¶ 88, 90.)

Defendant Christopher S. Porrino ("Porrino") served as the Attorney General for the State of New Jersey responsible for enforcing the provisions of the New Jersey Constitution and all other laws of the State. (*Id*. ¶ 13.) Defendant Robert J. Badolato ("Badolato") served as the Commissioner of the New Jersey Department of Banking and Insurance ("DOBI") responsible for overseeing the administration of all insurance-related State statutes. (*Id*. ¶ 14.) Defendant Florence J. Sheppard ("Sheppard") served as the acting Director of the New Jersey Division of Pensions and Benefits which oversees the implementation and operation of the SHBP and SEHBP. (*Id*. ¶15.) The remaining Defendants are members of New Jersey State commissions or committees responsible for the creation or administration of the SHBP and SEHBP.[5] (*Id*. ¶¶ 14, 16-21.)

On August 1, 2016, Plaintiffs filed suit in this Court pursuant to Federal Rule of Civil Procedure 65(a), which included a motion for injunctive relief. (ECF Nos. 1-3.) Defendants filed their opposition to Plaintiffs' motion for preliminary injunction on September 19, 2016. (ECF No. 13.) By Consent Orders, the hearing date of the motion was adjourned several times due to amendments of the Complaint. (ECF Nos. 19, 31, 33, 37.) On May 5, 2017, the Court issued an Order withdrawing, without prejudice, Plaintiffs' motion for preliminary injunction. (ECF No. 45.) On June 12, 2017, Plaintiffs filed a Third Amended Complaint. (ECF No. 51.) Plaintiffs' TAC alleges violations of: (1) the Equal Protection Clause of the Fourteenth Amendment, against

---

[5] Defendants SHBC and SEHBC (collectively, the "Commissions"), are the executive bodies responsible for operation of the SHBP and SEHBP. (*Id*. ¶¶ 9-10.) Defendants SHBPDC and SEHBPDC (collectively, the "Committees"), are the administrative bodies responsible for the SHBP and SEHBP. (*Id*. ¶¶ 11-12.)

all Defendants (Count I); (2) violation of the Due Process Clause of the Fourteenth Amendment, against all Defendants (Count II); (3) violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment, against all personal capacity individuals and all institutional Defendants (Count III); and (4) violation of Equal Protection under the New Jersey Constitution (Count IV). (*Id.*) Defendants now move to dismiss Plaintiffs' TAC. (ECF No. 52.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Eleventh Amendment immunity "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). Thus, a motion to dismiss based on Eleventh Amendment immunity is properly brought under Rule 12(b)(1). *Id.*

## III. DISCUSSION

"The Eleventh Amendment protects a state and its state officials from a federal suit unless: (1) Congress has abrogated the state's immunity; (2) the state has waived its own immunity; or (3) the plaintiff sues against an individual state officer for prospective relief to end an ongoing violation of federal law." *McGee v. Thomas*, No. 16-5501, 2018 U.S. Dist. LEXIS 4313, at *15 (E.D. Pa. Jan. 10, 2018) (citing *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001)). Eleventh Amendment immunity also extends to entities that are deemed "arms of the state." *Karns v. Shanahan*, No. 16-2171, 2018 U.S. App. LEXIS 700, at *7 (3d Cir. Jan. 11, 2018); *Denkins v. State Operated Sch. Dist. of Camden*, No. 16-4223, 2017 U.S. App. LEXIS 22461, at *3 (3d Cir. Nov. 9, 2017).

To determine whether an entity is an "arm of the state," courts in this circuit weigh three factors, commonly referred to as the *Fitchik* analysis: "(1) whether the money that would pay the judgment would come from the state treasury; (2) the status of the entity under state law; and (3) the degree of autonomy of the entity." *Denkins*, 2017 U.S. App. LEXIS 22461, at *4 (citing *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989)). Although this circuit "formerly assigned primacy to the funding factor, we have recalibrated those factors at the direction of the Supreme Court, and now weight [sic] them co-equally." *Id.*, at *4 (citing *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240 (3d Cir. 2005); *see also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997).

1. **Payment by State Treasury**

In evaluating the state treasury prong of the *Fitchik* analysis, this Court considers three subfactors:

> (1) a State's legal obligation to pay a money judgment entered against the alleged arm of the State; (2) alternative sources of funding (i.e., monies not appropriated by the State) from which the entity could pay such judgments; and (3) specific statutory provisions that immunize the State from liability for money judgments.

*Denkins*, 2017 U.S. App. LEXIS 22461, at *4-5 (quoting *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 86 (3d Cir. 2016)). Applying the first subfactor, here, the Commissions and Committees are entities functioning within the Division of Pensions of the New Jersey Department of Treasury ("Treasury Department").[6] N.J. Stat. Ann. §§ 52:14-17.27, 52:14-17.46.3, 52:14-17.46.4. The Commission and Committee members serve in their official capacities "without compensation"

---

[6] While Plaintiffs previously conceded that the Commissions were entitled to Eleventh Amendment immunity, Plaintiffs now argue, that in light of new facts, they no longer maintain that position. This Court notes that Plaintiffs' subsequent submission does not point to any additional facts to support their change in position. (ECF No. 40 at 4 n.2; ECF No. 58 at 21 n.25.)

7

and are reimbursed by the State for any "necessary expenditures."[7] N.J. Stat. Ann. §§ 52:14-17.27, 52:14-17.46.4. The New Jersey Legislature makes annual appropriations for the health benefit funds, and by statute, the State is obligated to pay within the limits of those available appropriations. N.J. Stat. Ann. § 52:14-17.33. Moreover, any funds that Horizon uses to pay out claims under Plaintiffs' insurance plans come from the State Treasury, on behalf of the State.[8]

In considering the second subfactor, there is no evidence of alternative sources of funding from which these defendants could pay an adverse judgment. The State Treasury retains ownership over the funds it appropriates and there is no indication that the Committees or Commissions are insured against money judgments or have the authority to purchase liability insurance to insulate the State from any adverse judgments. *See Maliandi*, 845 F.3d at 86-90. Thus, the defendants could not satisfy a judgment without State appropriated money. *See Jones v. Pub. Emp't Ret. Pensions Div.*, No. 09-5894, 2011 U.S. Dist. LEXIS 136502, at *8 (D.N.J. Nov. 29, 2011) (concluding that given the defendant's "status under state law as a part of the Department of Treasury, any monetary judgment against it would be paid through the state treasury"). As such, the first *Fitchik* factor leans in favor of finding that the State Treasury would be obligated to pay a judgment against the Commissions and Committees, and are therefore arms of the State.

2. **Status Under State Law**

In determining the entities' status under state law prong of the *Fitchik* analysis, this Court considers the following subfactors: "how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it

---

[7] This Court's *Fitchik* analysis also applies to Defendant Badolato in his capacity as a Commission member. (TAC ¶ 14.)
[8] The SHBP and SEHBP are self-funded by employee and employer contributions. The funds are remitted to the State Treasury and used to pay claims. N.J. Stat. Ann. §§ 52:14-17.30, 52:14-17.46.9.

8

is immune from state taxation." *Denkins*, 2017 U.S. App. LEXIS 22461, at *6 (quoting *Maliandi*, 845 F.3d at 91).

In evaluating the first subfactor, i.e. how state law treats the agency generally, "we look to (1) explicit statutory indications about how an entity should be regarded; (2) case law from the state courts . . . ; and (3) whether the entity is subject to laws for which the State itself has waived its own immunity." *Maliandi*, 845 F.3d at 91. Here, the New Jersey Legislature established the Committees and Commissions squarely within the Executive Branch of the State. N.J. Stat. Ann. §§ 52:14-17.27(b), 52:14-17.46.3, 52:18A-95. The enacting statutes do not provide that these entities were to operate "independent of any supervision or control" of the State. *See Maliandi*, 845 F.3d at 91 (finding an explicit statutory indicator where the operative statute provided that the institution "shall be independent of any supervision or control of the [State]"). Additionally, Courts in New Jersey have held that "[t]he [SHBP] is, in effect, the State of New Jersey acting as a self-insurer." *Beaver v. Magellan Health Servs., Inc.*, 80 A.3d 1160, 1161 (N.J. Super. Ct. App. Div. 2013) (quoting *Burley v. Prudential Ins. Co. of Am.*, 598 A.2d 936, 937 (N.J. Super. Ct. App. Div. 1991) (finding the SHBC is "the State agency charged with the operation of the program under the aegis of the Treasury Department")).[9] As a result, the Committees and Commissions, which oversee the SHBP and SEHBP, by extension, are also considered a State agency. Indeed, under the New Jersey Tort Claims Act, the Commissions and Committees are treated like any state agency for litigation purposes, "which typically counsels in favor of immunity." *Maliandi*, 845 F.3d at 93; N.J. Stat. Ann. §§ 52:13D-12 to -27, 59:1-1 to -12.3.

---

[9] This Court notes that the SEHBP, though statutorily created separately, is guided by the same general parameters as the SHBP. Thus, the same reasoning in *Beaver* is applied as to the SEHBP, which is also a State agency.

In considering the other subfactors, there is no indication that the Committees or Commissions invoked the authority to incorporate or are subject to taxation. Thus, the second *Fitchik* factor leans in favor of finding the Commissions and Committees are treated as State entities by New Jersey, and are therefore, arms of the State.

### 3. Degree of Autonomy

Applying the autonomy prong of the *Fitchik* analysis, this Court focuses on the "entity's governing structure and the oversight and control exerted by a State's governor and legislature." *Denkins*, 2017 U.S. App. LEXIS 22461, at *7 (quoting *Maliandi*, 845 F.3d at 96). The New Jersey Legislature created both the Committees and Commissions to establish and regulate a health benefits program for public and school employees of the State. N.J. Stat. Ann. §§ 52:14-17.27, 52:14-17.46.4. The Commission members' positions are either created by statute or appointment by the Governor or certain public union employee representatives. N.J. Stat. Ann. §§ 52:14-17.27, 52:14-17.46.3. Similarly, the Committee members' positions are created by appointment by the Governor or appointment by certain public employee union representatives. N.J. Stat. Ann. §§ 52:14-17.27, 52:14-17.46.3. With respect to the SHBC, its members are required to "publish annually a report showing the fiscal transactions of the program . . . to the Governor." N.J. Stat. § 52:14-17.27; *see also Maliandi*, 845 F.3d at 97-99 (reasoning that mandatory reporting requirements to the State lean in favor of finding that the entity is not autonomous). Moreover, the fact that the Treasury Department is responsible for maintaining control over, and making payments from the funds leans in favor of finding the entities are not autonomous.

However, by statute, the Commissions maintain the authority to establish rules and regulations, and their final decisions are appealable. The Committees have "the authority to

create, modify or terminate any plan . . . at [their] sole discretion" and "the same duty and responsibility to the programs" as do the Commission members. (TAC ¶ 44.)  Notwithstanding, the third factor weighs more in favor of finding the Commissions and Committees are not autonomous, and are therefore arms of the State.

On balance, the *Fitchik* factors weigh in favor of finding that the Commissions and Committees are arms of the State.  Consequently, Plaintiffs' claims are barred by the Eleventh Amendment, and Counts I and II will be **dismissed**.[10]

Further, Plaintiffs' claims against Defendants in their individual capacities are barred under the doctrine of qualified immunity.  *See Wright v. City of Pa.*, 409 F.3d 595, 599 (3d Cir. 2005) (citing *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (explaining that qualified immunity insulates public officials from suit unless they violate *clearly established* statutory or constitutional law rights) (emphasis added).  Defendants were not on notice that their conduct violated any clearly established law.  Additionally, Plaintiffs' claims against Defendants in their individual capacities are also dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs fail to sufficiently plead any allegation of wrongdoing as it relates to each individual Defendant.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "mere conclusory statements, do not suffice").  Therefore, Count III will be **dismissed**.

Similarly, Plaintiffs' state law claim alleging that Defendants violated the New Jersey Constitution is also barred by the Eleventh Amendment.  *See Pennhurst*, 465 U.S. at 121 (concluding that state-law claims brought in federal court against state officials alleging a

---

[10] Plaintiffs' claims against Defendants Badolato, Porrino, and Sheppard, as state officials, are also dismissed because these defendants are an extension of the Commissions and Committees. Further, Plaintiffs fail to sufficiently plead any allegations that these defendants, in performing their respective duties, injured Plaintiffs.

violation of state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment). Thus, Count IV will be **dismissed**.

IV. **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED.**[11] An appropriate Order follows.

                                                s/ *Susan D. Wigenton*
                                                **SUSAN D. WIGENTON**
                                                **UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Leda D. Wettre, U.S.M.J.
      Parties

---

[11] Because this Court lacks subject matter jurisdiction, it declines to reach the merits of Plaintiffs' claims that the 2001 Infertility Mandate and the Amended Infertility Mandate are facially discriminatory and restrict same-sex couples' fundamental right of procreation. Additionally, none of the Plaintiffs allege that they have sought or been denied coverage under the Amended Infertility Mandate. Therefore, Plaintiffs' claims, as they relate to alleged injuries under the Amended Infertility Mandate, are not ripe. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).